FILED IN OPEN COURT
U.S.D.C  Atlanta

IN THE UNITED STATES DISTRICT COURT FOR THE

AUG 0 8 2006

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

JAMES N. HATTEN, Clerk

By  pmW  Deputy Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL INDICTMENT |
| v. | : | |
| | : | NO. 1:06-CR-337 |
| CHRISTOPHER STOUFFLET, | : | |
| TROY SOBERT, | : | |
| VLADIMIR ANDRIES, M.D., | : | |
| THU ANH HOANG, M.D., | : | |
| STEVEN DANIEL HOLLIS, M.D., | : | |
| AHSAN U. RASHID, M.D., and | : | |
| ANDRE D. SMITH, M.D., | : | |
| | : | |
| Defendants. | : | |

THE GRAND JURY CHARGES THAT:

### INTRODUCTION

At times relevant to this Indictment:

### CONTROLLED SUBSTANCES ACT

1.   The Controlled Substances Act governed the manufacture, distribution, and dispensing of controlled substances in the United States.

2.   Various prescription drugs were scheduled substances under the Controlled Substances Act.   There were five schedules of controlled substances – schedules I, II, III, IV, and V.   Drugs were scheduled into these levels based on their potentiality for abuse, among other things.   Abuse of Schedule III drugs may lead to moderate or low physical dependence or high psychological dependence.   Abuse of Schedule IV drugs may lead to more limited

physical dependence or psychological dependence relative to the drugs or other substances in Schedule III. 21 U.S.C. §§ 812(b)(3) and (4).

3. Title 21, Code of Federal Regulations, Section 1306.04(a) provided:

> A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

4. Phentermine, a stimulant, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(e)(9). Adipex-P was a brand name for a prescription drug used for weight loss that contained Phentermine, and was therefore classified as Schedule IV controlled substances.

5. Phendimetrazine, a stimulant, was classified under federal narcotics laws as a Schedule III controlled substance. 21 C.F.R. § 1308.13(b)(5). Bontril was a prescription drug used for weight loss that contained phendimetrazine, and was therefore classified

-2-

as a Schedule III controlled substance.

6.    Sibutramine hydrochloride, a stimulant, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(e)(11).    Meridia, a prescription drug used for weight loss, contained sibutramine hydrochloride, and was therefore classified as a Schedule IV controlled substance.

## THE FEDERAL FOOD, DRUG, AND COSMETIC ACT

7.    The United States Food and Drug Administration ("FDA") was the agency of the United States charged with the responsibility of protecting the health and safety of the American public by assuring, among other things, that drugs sold to humans were safe and effective for their intended uses and bore labeling containing true and accurate information.    FDA's responsibilities included regulating the labels, labeling, distribution, and manufacture of prescription drugs shipped or received in interstate commerce.

8.    FDA was also responsible for, among other things, enforcing the provisions of the Federal Food, Drug, and Cosmetic Act ("FD&C Act"), 21 U.S.C. § 301 et seq.

9.    Under the FD&C Act, the term "drug" included articles which were (1) intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man; or (2) intended to affect the structure or any function of the body of man.    21 U.S.C. §§ 321(g)(1)(B) and (C).

10.    Some of the drugs regulated under the FD&C Act were

"prescription drugs."  "Prescription drugs" were those drugs, which because of their toxicity or other potential harmful effects, or the method of their use, or the collateral measures necessary for their use, were not safe for use except under the supervision of a practitioner licensed by law to administer such drugs, or which were required to be administered under the professional supervision of a practitioner licensed by law to administer such drug as a condition of FDA approving the drug to be placed on the market.  21 U.S.C. §§ 353(b)(1)(A) and (B).

11.    Viagra (Sildenafil citrate) was indicated for the treatment of erectile dysfunction, and was a prescription drug within the meaning of Title 21, United States Code, Sections 353(b)(1)(A) and (B).

12.    Xenical (Orlistat) was indicated for weight loss, and was a prescription drug within the meaning of Title 21, United States Code, Sections 353(b)(1)(A) and (B).

13.    Phendimetrazine (Bontril), Phentermine (e.g. Adipex-P), and Sibutramine hydrochloride (Meridia), described as controlled substances in paragraphs 4-7 above, were also prescription drugs within the meaning of Title 21, United States Code, Sections 353(b)(1)(A) and (B).

14.    The FD&C Act prohibited the misbranding of a drug while such drug was held for sale after shipment in  interstate commerce, or the causing of such misbranding.  21 U.S.C. § 331(k).

-4-

15.   The act of dispensing a prescription drug without the prescription of a practitioner licensed by law to administer such drug was an act that caused the drug to become misbranded while held for sale.   21 U.S.C. 353(b)(1).

## STATE LAWS

16.   An example of some state laws which imposed requirements upon doctors and healthcare professionals to take certain steps before they could prescribe, distribute, or dispense controlled substances included:

### Georgia Law

17.   Georgia law stated, in part, that a physician engaged in "unprofessional conduct" if the physician does the following:

*  *  *  *

(5) Prescribing controlled substances and/or dangerous drugs for a patient based solely on a consultation via electronic means with the patient based solely on a consultation via electronic means with the patient, patient's guardian or patient's agent. . . .

(6) Providing    treatment    and/or    consultation recommendations via electronic or other means unless the licensee has performed a history and physical examination of the patient adequate to establish differential diagnoses and identify underlying conditions and/or contra-indications to the treatment recommended. . . .

-5-

## DEFENDANTS

18.    Defendant CHRISTOPHER STOUFFLET was the majority shareholder, owner, operator, corporate officer, and/or director of businesses located in the Northern District of Georgia, that operated websites through which the defendants distributed and dispensed controlled substances and other prescription drugs, and laundered the proceeds thereof. Some of these businesses included escripts-md.com, myemd.com, Lifespan, and Virtual Wellness Networks.

19.    Defendant TROY SOBERT was a part owner, operator, and officer of businesses located in the Northern District of Georgia, that operated websites through which the defendants distributed and dispensed controlled substances and other prescription drugs, and laundered the proceeds thereof. Some of these businesses included escripts-md.com, Lifespan, and Virtual Wellness Networks. TROY SOBERT's responsibilities included the recruitment and hiring of pharmacies and physicians.

20.    Defendant VLADIMIR ANDRIES, M.D., was a physician licensed in the State of New York. Defendant ANDRIES authorized his name to appear on vials of drugs distributed and dispensed by defendants to customers of the Internet businesses. From in or about November 2002 through in or about December 2003, defendant ANDRIES authorized the distribution and dispensing of at least 33,400 prescriptions, including at least 1000 prescriptions of

-6-

Schedule III substances and at least 17,500 prescriptions of Schedule IV substances, which defendants sold through their Internet application process.

21.   Defendant THU ANH HOANG, M.D., was a physician licensed in the State of Texas.  Defendant HOANG authorized her name to appear on vials of drugs distributed and dispensed by defendants to customers of the Internet businesses.  From in or about June 2002 through in or about November 2002, defendant HOANG authorized the distribution and dispensing of at least 16,500 prescriptions, including at least 142 prescriptions of Schedule III substances and at least 7000 prescriptions of Schedule IV substances, which defendants sold through their Internet application process.

22.   Defendant STEVEN DANIEL HOLLIS, M.D., was a physician licensed in the State of Georgia.  Defendant HOLLIS authorized his name to appear on vials of drugs distributed and dispensed by defendants to customers of the Internet businesses.  From in or about August 2001 through in or about August 2002, defendant HOLLIS authorized the distribution and dispensing of at least 43,390 prescriptions, including at least 639 prescriptions of Schedule III substances and at least 26,000 prescriptions of Schedule IV substances, which defendants sold through their Internet application process.

23.   Defendant AHSAN U. RASHID, M.D., was a physician licensed in the State of California.  Defendant RASHID authorized his name

to appear on vials of drugs distributed and dispensed by defendants to customers of the Internet businesses. From in or about October 2002 through in or about February 2003, defendant RASHID authorized the distribution and dispensing of at least 12,000 prescriptions, including at least 190 prescriptions of Schedule III substances and at least 8000 prescriptions of Schedule IV substances, which defendants sold through their Internet application process.

24. Defendant ANDRE D. SMITH, M.D., was a physician licensed in the State of Michigan. Defendant SMITH authorized his name to appear on vials of drugs distributed and dispensed by defendants to customers of the Internet businesses. From in or about April 2002 through in or about November 2003, defendant SMITH authorized the distribution and dispensing of at least 65,000 prescriptions, including at least 1750 prescriptions of Schedule III substances and at least 39,800 prescriptions of Schedule IV substances, which defendants sold through their Internet application process.

### COUNT ONE
**(Conspiracy to Violate the Controlled Substances Act)**

25. The factual allegations of paragraphs 1 through 23 above are realleged and incorporated herein by reference.

26. Beginning in or before July 2001, the exact date being unknown, and continuing until in or about December 2003, in the Northern District of Georgia and elsewhere,

**CHRISTOPHER STOUFFLET,**
**TROY SOBERT,**
**VLADIMIR ANDRIES, M.D.,**

-8-

**THU ANH HOANG, M.D.,**
**D.S. HOLLIS, M.D.,**
**AHSAN U. RASHID, M.D., and**
**ANDRE D. SMITH, M.D.,**

defendants herein, knowingly and intentionally conspired and agreed together, and with others known and unknown to the Grand Jury, to commit the following offenses:

(a) to distribute and dispense Schedule III and IV controlled substances, including but not limited to, quantities of the following controlled substances: (1) Phentermine (including brand name Adipex-P), a Schedule IV controlled substance; (2) Phendimetrazine (brand name Bontril), a Schedule III controlled substance; and (3) sibutramine hydrochloride (brand name Meridia), a Schedule IV controlled substance, other than for a legitimate medical purpose, and not in the course of professional practice, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D), and 841(b)(2), and Title 21, Code of Federal Regulations, Section 1306.04; and

(b) to use a communication facility in committing and in causing and facilitating the distribution and dispensing of Schedule III and IV controlled substances, including but not limited to, quantities of the following controlled substances: (1) Phentermine (including brand name Adipex-P), a Schedule IV controlled substance; (2) Phendimetrazine (brand name Bontril), a Schedule III controlled substance; and (3) sibutramine hydrochloride (brand name Meridia), a Schedule IV controlled

substance, other than for a legitimate medical purpose and not in the usual course of professional practice, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D), 841(b)(2), and 843(b), and Title 21, Code of Federal Regulations, Section 1306.04.

## PURPOSE OF THE CONSPIRACY

27.  It was the purpose of the conspiracy to sell, via the Internet, controlled substances to consumers in the United States. To maximize profit, defendants used mass e-mailings, advertising, and other marketing schemes to sell large quantities of controlled substances to customers through the websites. Defendants' process for selling drugs violated the federal requirement under the Controlled Substances Act that controlled substances be dispensed only for a legitimate medical purpose and in the usual course of professional medical practice.

## MANNER AND MEANS OF THE CONSPIRACY

28.  It was a part of the conspiracy that defendants illegally dispensed controlled substances through several businesses using a variety of Internet websites.   On these websites, defendants advertised various controlled substances.   Some of the controlled substances defendants offered were drugs commonly known as Phentermine, Bontril, Adipex, and Meridia.

29.  It was further part of the conspiracy that defendants obtained information from customers over the Internet, using an

online ordering process.    In this ordering process, customers filled out an online order form and chose the type, quantity, and dosage of the controlled substance the customer wished to purchase. Customers also answered questions about their medical conditions. No one associated with the defendants checked the accuracy of the information customers provided, including their identities, ages, and qualifying medical conditions, such as weight.

30.    It was further part of the conspiracy that the customers provided credit card billing information at the time they completed the online order form.

31.    It was further part of the conspiracy that the websites stated that a physician would review the online order form and determine whether to authorize the distribution and dispensing of the requested drugs before defendants sent the drugs to the customers.    Physicians had no face-to-face contact with the customers, who lived throughout the United States.    Defendants caused the controlled substances to be distributed and dispensed to customers without:    an adequate patient history;  performing a mental or physical exam; using appropriate diagnostic or laboratory testing; or providing a means to monitor medication response. Generally, the order form was the only contact with the customer.

32.    It was further part of the conspiracy that defendants CHRISTOPHER STOUFFLET and TROY SOBERT were owners, operators, corporate officers, directors, and managers of the companies that

-11-

operated certain of the websites through which defendants sold and distributed controlled substances.

33. It was further part of the conspiracy that defendants VLADIMIR ANDRIES, M.D., THU ANH HOANG, M.D., STEVEN DANIEL HOLLIS, M.D., AHSAN U. RASHID, M.D., and ANDRE D. SMITH, M.D., were physicians who authorized the distribution and dispensing of controlled substances, including Phentermine, Meridia, Bontril, and Adipex, to Internet customers. Defendants VLADIMIR ANDRIES, M.D., THU ANH HOANG, M.D., STEVEN DANIEL HOLLIS, M.D., AHSAN U. RASHID, M.D., and ANDRE D. SMITH, M.D., had no face-to-face contact with these customers. The controlled substances were distributed and dispensed for other than a legitimate medical purpose and not in the usual course of professional practice.

34. It was further part of the conspiracy that prior to Spring 2001, defendant STOUFFLET founded, owned, and operated Youthspan, through which the Defendant, aided and abetted by others, dispensed testosterone and human growth hormone over the Internet through a website named LIFESPANLONGEVITY.COM. In or about June or July 2001, STOUFFLET changed the company from Youthspan d/b/a Lifespan to eScripts through which the Defendants, STOUFFLET and TROY SOBERT, aided and abetted by each other and by others known and unknown to the Grand Jury, dispensed controlled substances, including but not limited to Phentermine, by obtaining prescriptions without the customers entering into a legitimate

-12-

doctor-patient relationship.   By on or about March 1, 2003 the Defendants moved offices and renamed the company Virtual Wellness Networks, while operating the same or similar business.   Youthspan d/b/a Lifespan, eScripts, and Virtual Wellness Networks each operated out of offices located in the Northern District of Georgia.

### The Affiliate Program

35.   It was further part of the conspiracy that defendants CHRISTOPHER STOUFFLET and TROY SOBERT entered into marketing agreements with persons and entities known and unknown to the Grand Jury, in order to increase sales of controlled substances.   These marketing arrangements were known as "affiliate" or "partner" programs.   A person who became an "affiliate" or "partner" could earn commissions on sales generated from customers who linked to defendants' websites through the "affiliate" website.   Affiliate website were paid a commission for completed drug orders.

36.   It was further part of the conspiracy that defendants received payment for controlled substance drug orders from customers in various ways, including by credit cards.

37.   It was further part of the conspiracy that from the time period of in or about July 2001, through in or about December 2003, defendants distributed and dispensed through their Internet application process at least 260,000 prescriptions, including at least 5,600 prescriptions units of Schedule III substances and at

least 150,000 prescriptions of Schedule IV substances on the basis of the authorizations of the physicians associated with the websites.

38.   It was further part of the conspiracy that from on or about February 13, 2002, the exact date being unknown to the Grand Jury, until in or about December, 2003, defendants and others generated sales in excess of $75 million.

In violation of Title 21, United States Code, Section 846.


### COUNTS TWO THROUGH FOUR
**(Unlawful distribution and dispensing of controlled substances)**

39.   The factual allegations in paragraphs 1-38 of the Indictment are incorporated by reference and realleged as though fully set forth herein.

40.   On or about the dates listed below, in the Northern District of Georgia and elsewhere,

**CHRISTOPHER STOUFFLET (Counts 2-4),
TROY SOBERT (Counts 2-4),
VLADIMIR ANDRIES, M.D. (Count 3), and
ANDRE D. SMITH, M.D. (Counts 2 and 4),**

defendants herein, aided and abetted by each other and by others known and unknown to the Grand Jury, knowingly and intentionally, distributed and dispensed, and caused to be distributed and dispensed, a quantity of a controlled substance for other than a legitimate medical purpose and not in the usual course of professional practice, as charged in the chart below, each such

-14-

instance being a separate count of the Indictment:

| CTS | DEFENDANTS CHARGED | DATE | CONTROLLED SUBSTANCE DISTRIBUTED AND DISPENSED |
|---|---|---|---|
| 2 | CHRISTOPHER STOUFFLET, TROY SOBERT, ANDRE D. SMITH, M.D. | 09/16/2003 | Received in Atlanta, GA, 30 doses of Phentermine 37.5 mg, prescribed by Andre D. Smith, M.D., dispensed to R.A.K., Atlanta, GA |
| 3 | CHRISTOPHER STOUFFLET, TROY SOBERT, VLADIMIR ANDRIES, M.D. | 10/01/2003 | Received in Atlanta, GA, 30 doses Phentermine 37.5 mg, prescribed by Vladimir Andries, M.D., dispensed to K.M., Atlanta, GA |
| 4 | CHRISTOPHER STOUFFLET, TROY SOBERT, ANDRE D. SMITH, M.D. | 10/17/2003 | Received in Atlanta, GA, 90 doses Adipex-P 37.5 mg, prescribed by Andre D. Smith, M.D., dispensed to R.A.K., Atlanta, GA |

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(2); Title 18, United States Code, Section 2; and Title 21, Code of Federal Regulations, Section 1306.04.

## COUNT FIVE
### (Conspiracy to Launder Money)

41.  Beginning on or before February 13, 2002, the exact date being unknown, and continuing until in or about December 2003, in the Northern District of Georgia and elsewhere,

**CHRISTOPHER STOUFFLET and**
**TROY SOBERT,**

defendants herein, did knowingly combine, conspire, confederate and agree, together, and with others known and unknown to the Grand Jury, to commit certain offenses under Title 18, United States

Code, Sections 1956 and 1957, as follows:

(a) to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, described below, which transactions involved the proceeds of specified unlawful activity, to wit, the illegal distribution and dispensing of controlled substances, in violation of Title 21, United States Code, Sections 841(a), 843(b), 846, and 848(c), with the intent to promote the carrying on of such specified unlawful activity and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

(b) to knowingly engage and attempt to engage in monetary transactions by, through, and to financial institutions, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, the illegal distribution and dispensing of controlled substances, in violation of Title 21, United States Code, Sections 841(a), 843(b), 846, and 848(c) and in violation of Title 18, United States Code, Section 1957.

## OBJECT OF THE CONSPIRACY

42. The object of the conspiracy was for the conspirators to obtain large quantities of funds, thereby enriching themselves, in

exchange for distributing and dispensing controlled substances for other than a legitimate medical purpose and not in the usual course of professional practice.

### MANNER AND MEANS

43.  It was part of the money laundering conspiracy that:

(a)  defendants solicited and serviced customers seeking to obtain controlled substances in the manner set out in paragraphs 1-40 above;

(b)  defendants charged their customers fees for the cost of controlled substances illegally distributed and dispensed, for shipping of those drugs, and sometimes for the review of a customer's order form by a physician, knowing that the payment of those fees constituted the proceeds of unlawful activity;

(c)  after receiving funds in payment of the fees charged to the customers, defendants caused the funds to be deposited into bank accounts of the various entities and individuals involved in the conspiracy;

(d)  defendants then caused transfers of money from those bank accounts for the purpose of paying the expenses incurred to conduct the unlawful drug sales, such as shipping bills, wholesale prescription drug bills, pharmacy dispensing bills, rent, and employee salaries, with the intent to further promote the ongoing unlawful drug sales; and

(e)  after receiving funds from sales of illegally

-17-

prescribed drugs, defendants caused the funds to be deposited into bank accounts from which they transferred the funds in amounts greater than $10,000.

### OVERT ACTS

44.    In furtherance of the conspiracy and to effect its aims and objects, one or more of the co-conspirators committed or caused to be committed at least one of the overt acts set forth in Counts 6-48 in the Northern District of Georgia and elsewhere:

In violation of Title 18, United States Code, Section 1956(h).

### COUNTS SIX THROUGH THIRTY-ONE
### (Promotional Money Laundering)

45.    The allegations in Paragraphs 1 through 45 are realleged and incorporated by reference.

46.    From in or about March 2002 through at least April 2003, defendants maintained bank accounts at in the names and with the account numbers as charged in the chart below, which accounts were used to receive funds from sales of illegally distributed and dispensed controlled substances.

47.    From on or about March 2002 through at least April 2003, funds from these bank accounts were used to pay expenses of the illegal drug scheme.

48.    On or about the dates enumerated as to each count, in the Northern District of Georgia, and elsewhere,

-18-

**CHRISTOPHER STOUFFLET and
TROY SOBERT,**

defendants herein, knowingly conducted and attempted to conduct financial transactions affecting interstate and foreign commerce, in the approximate amounts set forth below, which involved the proceeds of specified unlawful activity, that is the illegal distributing and dispensing of controlled substances in violation of Title 21, United States Code, Sections 841(a), 843(b) and 846, with the intent to promote the carrying on of the specified unlawful activity, and while conducting and attempting to conduct such financial transactions knew the property involved in the financial transactions represented the proceeds of some form of unlawful activity; that is, the defendants, aiding and abetting one another, caused monies that had been paid to the defendants for controlled substances defendants had illegally distributed and dispensed through websites controlled by the defendants to be transferred to the payees set forth below, to promote the unlawful activity:

| Cts | Date | Amount and Transaction | Account Transaction From | Account Transaction To |
|-----|------|------------------------|--------------------------|------------------------|
| 6 | 6/26/2002 | $261,515.59 | Speed Scripts | Citibank 3200011672 |
| 7 | 7/2/2002 | $247,635.01 | Speed Scripts | Citibank 3200011672 |
| 8 | 7/3/2002 | $240,359.09 | Speed Scripts | Citibank 3200011672 |

| Cts | Date | Amount and Transaction | Account Transaction From | Account Transaction To |
|---|---|---|---|---|
| 9 | 7/15/2002 | $208,663.56 | Speed Scripts | Citibank 3200011672 |
| 10 | 7/18/2002 | $227,261.07 | Speed Scripts | Citibank 3200011672 |
| 11 | 7/24/2005 | $221,804.42 | Speed Scripts | Citibank 3200011672 |
| 12 | 8/22/2002 | $303,961.68 | Speed Scripts | Citibank 3200011672 |
| 13 | 3/27/2003 | $230,967.25 | Speed Scripts | Citibank 3200011672 |
| 14 | 4/03/2003 | $234,639.19 | Speed Scripts | Citibank 3200011672 |
| 15 | 4/10/2003 | $199,038.17 | Speed Scripts | Citibank 3200011672 |
| 16 | 3/19/2002 | $370,824.46 | Infustat, Inc. | Citibank 3200274778 |
| 17 | 3/26/2002 | $258,847.58 | Infustat, Inc. | Citibank 3200274778 |
| 18 | 4/02/2002 | $287,390.52 | Infustat, Inc. | Citibank 3200274778 |
| 19 | 4/09/2002 | $292,138.95 | Infustat, Inc. | Citibank 3200274778 |
| 20 | 4/17/2002 | $272,612.79 | Infustat, Inc. | Citibank 3200274778 |
| 21 | 4/23/2002 | $256,376.62 | Infustat, Inc. | Citibank 3200274778 |
| 22 | 5/01/2002 | $256,876.16 | Infustat, Inc. | Citibank 3200274778 |
| 23 | 5/08/2002 | $225,019.75 | Infustat, Inc. | Citibank 3200274778 |
| 24 | 5/15/2002 | $200,825.77 | Infustat, Inc. | Citibank 3200274778 |

| Cts | Date | Amount and Transaction | Account Transaction From | Account Transaction To |
|-----|------|------------------------|--------------------------|------------------------|
| 25 | 5/01/2002 | $127,016.10 | Atlas RX | Colonial Bank 8010068214 |
| 26 | 5/08/2002 | $128,045.42 | Atlas RX | Colonial Bank 8010068214 |
| 27 | 5/15/2002 | $116,882.78 | Atlas RX | Colonial Bank 8010068214 |
| 28 | 5/23/2002 | $135,946.10 | Atlas RX | Colonial Bank 8010068214 |
| 29 | 6/19/2002 | $109,570.88 | Atlas RX | Colonial Bank 8010068214 |
| 30 | 6/28/2002 | $110,560.14 | Atlas RX | Colonial Bank 8010068214 |
| 31 | 8/22/2002 | $113,127.42 | Atlas RX | Colonial Bank 8010068214 |

In violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

### COUNTS THIRTY-TWO THROUGH FORTY-EIGHT
### (Transactional Money Laundering)

49.    The allegations in Paragraphs 1 through 50 are realleged and incorporated by reference.

50.    From in or about September 28, 2001 through at least March 2003, defendants maintained bank accounts in the names and with the account numbers as charged in the chart below, which accounts were used to receive funds from sales of illegally distributed and dispensed controlled substances.

51.    On or about the dates set forth below, in the Northern

District of Georgia,

## CHRISTOPHER STOUFFLET and
## TROY SOBERT,

defendants herein, aided and abetted by each other and by others known and unknown to the Grand Jury, knowingly engaged and attempted to engage in monetary transactions, by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit into and transfer of funds out of accounts set forth in the chart below, such property having been derived from a specified unlawful activity, that is, the illegal dispensing of controlled substances in violation of Title 21, United States Code, Sections 841(a), 843(b) and 846:

| Cts | Date | Amount | By | From Account | Payee | Re |
|-----|------|--------|-----|--------------|-------|-----|
| 32 | 2/12/2003 | $28,372.08 | Troy Sobert | BoA327993 3628 ck659 | Earl Small Harley | Fat Boy HD |
| 33 | 3/04/2003 | $43,000.00 | Troy Sobert | BoA327993 3628 ck673 | Sessoms Homes | Annis-ton Ct. Prop-erty |
| 34 | 3/18/2003 | $220,000.00 | Troy Sobert | BoA327993 3628 ck687 | Troy Sobert | Purchase Cashiers Check |
| 35 | 4/11/2003 | $154,795.64 | Troy Sobert | BoA327993 3628 ck704 | Solomon Smith Barney | Loan Repay |
| 36 | 6/14/2002 | $100,000.00 | Chris Stoufflet | BoA 003279934 618/ ck698 | Stoufflet Consulting | "start up funds" |

| Cts | Date | Amount | By | From Account | Payee | Re |
|---|---|---|---|---|---|---|
| 37 | 9/16/2002 | $15,000.00 | Chris Stoufflet | BoA 003279934 618/ ck653 | Ron Stoufflet | |
| 38 | 12/04/2002 | $10,966.85 | Chris Stoufflet | BoA003279 934618/ck 672 | Wolf Design Group | "invoice 1203" |
| 39 | 12/11/2002 | $20,000.00 | Chris Stoufflet | BoA 003279934 618/ ck673 | RAUAM Interiors | "deposit on drapes" |
| 40 | 5/25/2001 | $5,000.00 | Chris Stoufflet | Suntrust 813011494 /ck900 | First American Title | Deposit 2828 Peachtree property |
| 41 | 6/24/2001 | $5,000.00 | Chris Stoufflet | Suntrust 813011494 /ck906 | Caryle Group | 2828 Peachtree |
| 42 | 9/24/2001 | $10,000.00 | Chris Stoufflet | Suntrust 813011494 /ck923 | First American Title | |
| 43 | 9/28/2001 | $40,000.00 | Chris Stoufflet | Suntrust 813011494 /ck924 | Emily's Interiors | "Design for Condo" |
| 44 | 1/08/2002 | $100,000.00 | Chris Stoufflet | Suntrust 813011494 /ck945 | BoA (funds transfer) | Funds Transfer |
| 45 | 1/08/2002 | $100,000.00 | Chris Stoufflet | Suntrust 813011494 /ck946 | BoA (funds transfer) | Funds Transfer |
| 46 | 4/09/2002 | $60,000.00 | Chris Stoufflet | Suntrust 813011494 /ck976 | Coldwell Bankers | real estate earnest deposit |
| 47 | 4/09/2002 | $15,000.00 | Chris Stoufflet | Suntrust 813011494 /ck979 | Clark Interiors | "floors" |

| Cts | Date | Amount | By | From Account | Payee | Re |
|---|---|---|---|---|---|---|
| 48 | 4/25/2002 | $30,000.00 | Chris Stoufflet | Suntrust 813011494 /ck983 | Emily's Interiors | |

In violation of Title 18, United States Code, Sections 1957 and 2.

## COUNTS FORTY-NINE THROUGH FIFTY-ONE

### (Misbranded Drugs While Held for Sale after Shipment in Interstate Commerce)

52.    The factual allegations in paragraphs 1-53 of the Indictment are incorporated by reference and realleged as though fully set forth herein.

53.    On or about the dates listed below, in the Northern District of Georgia and elsewhere,

### CHRISTOPHER STOUFFLET and TROY SOBERT,

defendants herein, aided and abetted by each other and by others known and unknown to the Grand Jury, with the intent to defraud and mislead, as set forth in the chart below each such instance being a separate count of the Indictment, caused prescription drugs that had been shipped in interstate commerce to become misbranded while held for sale within the meaning of Title 21, United States Code, Section 353(b)(1), to wit, the  drugs were dispensed without the prescription of a practitioner licensed by law to administer such drugs.

-24-

| CTS | DATE | PRESCRIPTION DRUGS DISTRIBUTED & DISPENSED |
|-----|------|---------------------------------------------|
| 49 | 09/16/2003 | 30 Phentermine 37.5 mg doses distributed and dispensed to R.A.K. in Atlanta, Georgia |
| 50 | 10/01/2003 | 30 Phentermine 37.5 mg doses distributed and dispensed to K.M. in Atlanta, Georgia |
| 51 | 10/17/2003 | 90 Adipex-P 37.5 mg doses distributed and dispensed to R.A.K. in Atlanta, Georgia |

In violation of Title 21, United States Code, Sections 331(k), 333(a)(2), 353(b)(1); and Title 18, United States Code, Section 2.

## FORFEITURE NOTICE

54. The allegations of Counts One through 48 of this Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 21, United States Code, Section 853, and Title 18 United States Code, Section 982.

55. Pursuant to Rule 32.2(a) FED. R. CRIM. P., the defendants are hereby notified that, if convicted of any of the offenses alleged above, the defendants shall forfeit to the United States pursuant to Title 21, United States Code, Sections 853, and Title 18, United States Code, Section 982(a)(1) their interest in any property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds obtained, directly or indirectly, as a result of such violation and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the

-25-

violation, including but not limited to:

**A.  Licenses**

(1)  All DEA registrations and all medical licenses in the name of VLADIMIR ANDRIES;

(2)  All DEA registrations and all medical licenses in the name of THU ANH HOANG;

(3)  All DEA registrations and all medical licenses in the name of STEVEN DANIEL HOLLIS;

(4)  All DEA registrations and all medical licenses in the name of AHSAN U. RASHID;

(5)  All DEA registrations and all medical licenses in the name of ANDRE D. SMITH.

**B.  Money Judgment**

A sum of money equal to at least $75 million in United States currency, representing the amount of proceeds obtained as a result of the conspiracy to violate the Controlled Substances Act, for which the defendants are jointly and severally liable.

56.  Pursuant to Title 21, United States Code, Section 853(p), and as incorporated by Title 18, United States Code, Section 982(b), each defendant shall forfeit substitute property, up to the value of the amount described in paragraph 55 if, by any act or omission of the defendant, the property described in paragraph 55, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been

placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty. The property subject to forfeiture as substitute assets includes, but is not limited to, the items described in paragraph 55 above, and:

(a) All right, title, and interest in any and all property involved in the conspiracy to commit money laundering, in violation of Title 18, United States Code, Sections 1956 and 1957, and all property traceable to such property, including the following: (1) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of Section 1956; (2) all commissions, fees and other property constituting proceeds obtained as a result of those violations; and (3) all property used in any manner or part to commit or to facilitate the commission of those violations. Such property shall include, but not be limited to, all items and property set forth above in paragraph 55.

(b) A sum of money equal to the total amount of money involved in the conspiracy to commit money laundering. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

All in accordance with Title 18, United States Code, Section 982(a)(1) and (b), and Rule 32.2(a), Federal Rules of Criminal Procedure.

A _____ True _____ BILL

_____

FOREPERSON

DAVID E. NAHMIAS
UNITED STATES ATTORNEY

RANDY S. CHARTASH
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 121760

LAWRENCE R. SOMMERFELD
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 666936

600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
Telephone 404/581-6000
Facsimile 404/581-6181

-28-